**M.W. KELLOGG CONSTRUCTORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**UNITED ASSOCIATION OF JOURNEY-MEN AND APPRENTICES OF THE PLUMBING AND PIPE–FITTING IN-DUSTRY OF THE UNITED STATES AND CANADA, LOCAL UNION NO. 469, AFL–CIO; Local 250, AFL–CIO, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**M.W. KELLOGG CONSTRUCTORS, INC.; United Association of Journeymen & Apprentices of the Plumbing and Pipe–Fitting Industry of the United States and Canada, Local 250, AFL–CIO, Respondents.**

Nos. 87–7325, 87–7347 and 87–7426.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1988.

Decided Feb. 7, 1989.

William C. Bottger, Jr. and Jeffrey L. Cutler, Latham & Watkins, Los Angeles, Cal., for petitioner M.W. Kellogg Constructors, Inc.

Linda Dreeben and John D. Burgoyne, N.L.R.B., Washington, D.C., for respondent N.L.R.B.

Jeffrey L. Cutler, Pappy & Davis, Los Angeles, Cal., for petitioner Pipe Fitters.

Before WALLACE and SCHROEDER, Circuit Judges, and THOMPSON,[*] District Judge.

PER CURIAM:

This unfair labor practice case is before us again after we remanded it to the National Labor Relations Board for further findings. Our original decision is reported as *M.W. Kellogg Constructors, Inc. v. NLRB*, 806 F.2d 1435 (9th Cir.1986). The Board has once more found the employer and the union guilty of unfair labor practices. Because the Board has failed to follow our mandate we do not enforce its order.

The case arises out of unfair labor practice charges concerning layoffs and overtime decisions on a construction project. The union, U.A. Local 250, furnished plumbers and pipefitters to the employer, Kellogg, who was the general contractor on the project. The layoff and overtime decisions had the effect of giving preference to members of Local 250, and the decisions therefore adversely affected "travelers" on the job, members of local unions outside the geographic jurisdiction of Local 250.

The Board originally held that the preferences were the product of an unlawful agreement between Local 250 and Kellogg to discriminate based on union membership, in violation of sections 8(a)(3) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(3) and (b)(2). On review to this court, we remanded because the Board's findings were not sufficient for us to determine whether the overtime and layoff decisions were based on an unlawful agreement to discriminate on the basis of union membership, or whether they were based upon a lawful agreement pursuant to section 8(f)(4) of the NLRA, 29 U.S.C. § 158(f)(4). That section authorizes agreements in the construction industry that give preferences "based upon length of service with [an] employer, in the industry or in the particular geographic area." *See Kellogg*, 806 F.2d at 1440.

In our earlier decision we recognized that lawful agreements pursuant to section 8(f)(4) may encompass priorities in layoffs and overtime as well as in initial dispatch. We further recognized that such agreements need not be in writing. We stressed that in this case the union had shown that it had a lawful section 8(f)(4) "book system" giving preferences in hiring referrals to those employees on "Book I," who had more than 3,000 hours in Local 250's geographic jurisdiction. In addition, there was at least a high correlation between Local 250 membership and Book I listing. We held that the disparate adverse effect of the decisions on "travelers," upon which the Board relied, was not sufficient to show a violation of section 8(a)(3) when, as in this case, the union had satisfied its burden of coming forward with a showing that it had a defense based upon section 8(f)(4). We said:

> The very purpose of section 8(f)(4), however, was to immunize certain agreements and practices from unfair labor practice charges under section 8(a)(3). We therefore conclude that an agreement is not necessarily excluded from section 8(f)(4) merely because its *effect* may be to advantage local union members and to disadvantage travelers and other nonmembers of the local union. Nor does an agreement fall outside section 8(f)(4) on the ground that a union and employer adopted the agreement because of its disparate impact between local union members and nonmembers. A contrary ruling would be absurd, since it would mean section 8(f)(4) applied only where a section 8(a)(3) violation would not lie in any event.

*Id.* at 1439.

The board, as evidence of unlawful discriminatory intent, had also relied upon statements of Kellogg foremen and union stewards to the effect that "local hands" would receive overtime but "travelers" would not. The union and Kellogg argued that these statements meant only that the parties were following a lawful book sys-

---

[*] Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

tem for geographic preferences, because the composition of the workforce was such that virtually all the "local hands" were entitled to Book I preference. We were unable to determine on the basis of the factual findings of the administrative law judge whether this was so.

We remanded for further consideration by the Board, making clear that the burden of proof was on the General Counsel to establish that the agreement was unlawfully based upon union membership rather than work seniority in the territory.

> [I]t was imperative for the General Counsel to carry the burden of disproving reliance on the four-book system. Neither the Board nor the ALJ made any explicit finding as to the effect of the workforce composition on the meaning of the words "traveler," "local hand," or "Local 250 member," on this particular job. In the absence of any such finding, we are not in a position to review the Board's conclusion that there was discrimination based upon union membership and to determine whether it is supported by substantial evidence in the record considered as a whole.

*Id.* at 1442.

On remand, the Board took no new evidence, but did make additional findings on the composition of the workforce. Its additional findings show that all but one person on Book I was a Local 250 member, and that no Local 250 members were on the other books. This means all of the Local 250 members were lawfully entitled to Book I preference by virtue of their work experience; none were given any overtime or layoff preference to which they would not have been entitled by virtue of a lawful section 8(f)(4) agreement.

In these circumstances the General Counsel did not carry its burden of disproving that Kellogg and the union were relying upon the lawful four-book system. The petition of the Board for enforcement must be denied and the petition for review granted.

IT IS SO ORDERED.